UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MARITZ HOLDINGS INC., )<br>)<br>Plaintiff, )<br>)<br>)<br>vs. )<br>)<br>CERTAIN UNDERWRITERS AT )<br>LLOYD'S LONDON SUBSCRIBING TO )<br>POLICIES NUMBERED B122F10115115 )<br>AND F10115116, et al., )<br>)<br>Defendants. ) | Case No. 4:18-CV-00825 SEP |

## **MEMORANDUM AND ORDER**

This matter is before the Court on Defendant Certain Underwriters at Lloyd's London Subscribing to Policies Numbered B122F10115115 and F10115116's ("Underwriters") Motion to Dismiss Vexatious Refusal to Pay Claim of Plaintiff Maritz Holdings Inc.'s ("Maritz" or "Plaintiff") Amended Complaint. Doc. [101]. For the reasons stated below, the Motion to Dismiss will be denied.

### I. Factual and Procedural Background

This case involves a dispute over insurance coverage for alleged losses arising out of cyber-security breaches experienced by Plaintiff, through which certain electronically stored gift card information was stolen. Underwriters issued breach-response insurance coverage to Maritz for 2015 through 2017 under two separate insurance contracts ("Insurance Contracts"). The Insurance Contracts provided coverage for, among other things, certain fees and costs Maritz might incur in responding to such a security breach. Maritz experienced two cyber-security breaches: one in March 2016, and another in February 2017. Maritz submitted claims to Underwriters for expenses it alleges are covered under the Insurance Contracts.

Underwriters denied coverage on Maritz's claims, after which Maritz filed the instant action, asserting claims for breach of contract against all Defendants, and vexatious refusal

against Defendant Underwriters, and seeking damages of between approximately $4.5 and 5.5 million. Maritz's complaint was initially filed in state court and was removed to this Court on the basis of diversity of the parties. Doc. [1]. Maritz subsequently filed an Amended Complaint, adding another of its insurers, Affiliated FM, as an additional Defendant. Doc. [45]. Underwriters filed the instant Motion to Dismiss Count II of the Amended Complaint for vexatious refusal to pay pursuant to Federal Rule of Civil Procedure 12(b)(6). Doc. [101].

Because Underwriters filed its Motion to Dismiss after it had already answered the Amended Complaint, a motion to dismiss under subsection (b)(6) of Rule 12 is untimely. *See* Fed. R. Civ. P. 12(b) ("A motion asserting [failure to state a claim] must be made before pleading if a responsive pleading is allowed."). After Maritz noted this deficiency in its memorandum in opposition to the Motion to Dismiss (Doc. [108]), Underwriters asked the Court to treat its motion as one for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Because the applicable legal standard under either subsection of Rule 12 is the same, the Court will construe the motion as though it were initially made under Rule 12(c).

**II.   Discussion**

*A.   Legal Standard*

The Court applies the same standard of review to a motion for judgment on the pleadings under Rule 12(c) as it does to a motion to dismiss under Rule 12(b)(6). *See Gallagher v. City of Clayton*, 699 F.3d 1013, 1016 (8th Cir. 2012). The purpose of either such motion is to test the legal sufficiency of a claim. *Neitzke v. Williams*, 490 U.S. 319, 326 (1989). The Court must view the facts pleaded by the nonmoving party as true and grant all reasonable inferences in favor of that party. *Clemons v. Crawford*, 585 F.3d 1119, 1124 (8th Cir. 2009). The Court will grant the motion only if the moving party has clearly established that it is entitled to judgment as a matter of law. *Waldron v. Boeing Co.*, 388 F.3d 591, 593 (8th Cir. 2004).

*B.   Parties' Arguments*

The Insurance Contracts each contain a choice-of-law provision stating:

> In case of any dispute arising out of this Insurance, the same shall be governed by the laws of New York and subject to the exclusive jurisdiction of the courts of the United States of America in accordance with the attached wording.

Docs. [4-1] at 5; [4-2] at 5.

Underwriters asserts that Maritz's claim in Count II for vexatious refusal to pay under Mo. Rev. Stat. § 375.420[1] is a "dispute arising out of [the] Insurance," and as such, is governed by New York law according to the choice-of-law provision in the Insurance Contracts. *See* Doc. [102] at 4-5. Underwriters argues that the claim must fail as a matter of law because it is made under Missouri law, and therefore fails to state a claim under the applicable governing law.

Maritz asserts that the "arising out of" language in the Insurance Contracts only applies to disputes involving the interpretation of the two policies. Maritz argues that the vexatious refusal claim is not truly one "arising out of [the] Insurance," but rather, one arising out of Underwriters's allegedly improper conduct in responding to Maritz's claimed losses after it submitted its claim on the breaches.

Maritz also argues that even if this Court were to conclude that the Insurance Contracts' choice-of-law provision applies to its vexatious refusal claim, that still would not preclude its claim, because the deprivation of such claim would be contrary to a fundamental policy of Missouri—protecting its residents from unfair practices by insurers—and Missouri courts apply the law of another jurisdiction only if "th[e] law is not contrary to a fundamental policy of Missouri." *Sturgeon v. Allied Pros. Ins. Co.*, 344 S.W.3d 205, 210 (Mo. Ct. App. 2011).

    *C. Analysis*

The Court rejects Maritz's argument that its vexatious refusal claim is not a "dispute arising out of [the] Insurance" policies. The unambiguous wording of the clause is not limited to contractual disputes, but on its face applies to "any" dispute arising out of the Insurance Contracts. Maritz's claim for vexatious refusal to pay is plainly one that arises out of the Insurance Contracts. The claim is predicated on the existence of the policies and could not be brought if they were not in effect. *See Thomas Farms, Ltd. v. Nat'l Union Fire Ins. Co. of*

---

[1] Mo. Rev. Stat. § 375.420 provides:

> In any action against any insurance company to recover the amount of any loss under a policy of automobile, fire, cyclone, lightning, life, health, accident, employers' liability, burglary, theft, embezzlement, fidelity, indemnity, marine or other insurance except automobile liability insurance, if it appears from the evidence that such company has refused to pay such loss without reasonable cause or excuse, the court or jury may, in addition to the amount thereof and interest, allow the plaintiff damages not to exceed twenty percent of the first fifteen hundred dollars of the loss, and ten percent of the amount of the loss in excess of fifteen hundred dollars and a reasonable attorney's fee; and the court shall enter judgment for the aggregate sum found in the verdict.

*Pittsburgh*, No. 1:18CV00196 AGF, 2019 WL 460503 at *3 (E.D. Mo. Feb. 6, 2019) ("[A] claim for vexatious refusal to pay is necessarily predicated on a breach of an insurance policy."); *see also Minden v. Atain Specialty Ins. Co.*, 788 F.3d 750, 756 (8th Cir. 2015) (A vexatious refusal claim "requires an insured to prove: (1) the existence of the insurance policy; (2) the insurance company's refusal to pay; and (3) such refusal was without reasonable cause or excuse."). That is not the end of the analysis, though. The Court must still determine whether New York law controls and precludes Maritz's claim for vexatious refusal to pay.

A district court sitting in diversity jurisdiction applies the conflict-of-law rules for the state in which it sits. *DCS Sanitation Mgmt., Inc. v. Castillo*, 435 F.3d 892, 895 (8th Cir. 2006); *Inacom Corp. v. Sears, Roebuck & Co.*, 254 F.3d 683, 687 (8th Cir. 2001) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941)); *see also Harris v. Am. Mod. Home Ins. Co.*, 571 F. Supp. 2d 1066, 1075 (E.D. Mo. 2008) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)) ("A federal district court sitting in diversity jurisdiction must apply the rules of decision that would be applied by the courts of the state in which it sits, including the initial choice of the applicable substantive law."). Thus, we apply Missouri's conflict-of-law rules.

Missouri recognizes that contracting parties may choose the state whose law will govern the interpretation of their contractual rights and duties. *See, e.g.*, *Sturgeon*, 344 S.W.3d at 209-11 (citing *Tri–County Retreading, Inc. v. Bandag Inc.*, 851 S.W.2d 780, 784 (Mo. Ct. App. 1993)); *Nakao v. Nakao*, 602 S.W.2d 223, 226 (Mo. Ct. App. 1980). So long as the application of the chosen law is not contrary to the public policy of Missouri, Missouri courts will generally honor the parties' choice-of-law provision. *Sturgeon*, 344 S.W.3d at 210.

Missouri courts have long recognized, however, that "'a state may not be required to enforce in its own courts the terms of an insurance policy normally subject to the law of another state where such enforcement will conflict with the public policy of the state of the forum.'" *Asel v. Ord. of United Com. Travelers of Am.*, 197 S.W.2d 639, 645 (Mo. banc. 1946) (quoting *Hoopeston Canning Co. v. Cullen*, 318 U.S. 313, 316-17 (1943)). *See also Milburn v. Zurich Am. Ins. Co.*, 4:19-cv-02719-SNLJ, 2020 WL 4673785, at *3 (E.D. Mo. Aug. 12, 2020) ("Long ago, the Missouri Supreme Court made clear that public policy can override the terms of an insurance policy normally subject to the laws of another state" when such enforcement would conflict with the public policy of Missouri.) (internal quotation marks omitted)**.** Consequently, where the application of the chosen law would be contrary to Missouri public policy, Missouri

4

courts may instead choose to apply the law of their own state. *See Sturgeon*, 344 S.W.3d at 209–11 (refusing to honor insurance policy choice-of-law provision for California law because application of California law would deprive Missouri insured of statutory right to avoid arbitration and therefore violated Missouri public policy). Accordingly, the law of the state chosen by the parties—here, New York—will only govern if its application would not be contrary to the public policy of Missouri.

The Missouri Supreme Court informs us that "exceptions based on public policy must usually find support in . . . statutory provisions," *Halpin v. Am. Fam. Mut. Ins. Co.*, 823 S.W.2d 479, 483 (Mo. banc. 1992), and are applied where "there is some local interest in the forum state to be protected" by its application. *Asel*, 197 S.W.2d at 645. Additionally, Missouri courts have recognized that the "paramount concern" of Missouri public policy is "the protection of its own citizens." *Gilmore v. Attebery*, 899 S.W.2d 164, 168 (Mo. Ct. App. 1995).

Maritz asserts that these conditions are met here. Maritz notes that the vexatious refusal statute at issue arises out of the established Missouri public policy of protecting its residents from unfair and bad faith practices by insurers. *See Duncan v. Andrew Cnty. Mut. Ins. Co.*, 665 S.W.2d 13, 19-20 (Mo. Ct. App. 1983) (the vexatious refusal statute provides "a statutory procedural remedy in favor of insureds for redress of abuses by insurers" and is "a clear expression of public policy on the subject"). Maritz contends that it would violate that public policy to allow an insurer to insulate itself from the vexatious refusal statute by including in an insurance policy a provision stating, for example, that "the Missouri insured shall have no right to pursue a claim for vexatious refusal against the insurer no matter the insurer's behavior." *See* Doc. [108] at 8. Maritz argues that an insurer should not be allowed to achieve that same end via a choice-of-law provision that works to strip Missouri insureds of the protections afforded by the vexatious refusal statute. The Court agrees.

Missouri "has a strong interest in protecting its own citizens," *Sheehan v. Nw. Mut. Life Ins. Co.*, 44 S.W.3d 389, 396 (Mo. Ct. App. 2000), as well as a "substantial interest in the business of insurance of its people [and] property," *Asel*, 197 S.W.2d at 645. *See also Irish v. Allied Prop. & Cas. Ins. Co.*, No. 13-05015-CV-SW-JTM, 2013 WL 3773982, at *1 n.1 (W.D. Mo. July 18, 2013) ("Historically, Missouri courts consistently held that when an insurer refused to pay a claim without good reason, the insured should be awarded contract damages plus statutory damages for 'vexatious refusal to pay.' The statutory damages . . . were enacted to

5

make whole the insured who is forced to litigate to recover contractual damages.") (citation omitted)).  The insured, Maritz, has been a Missouri-based corporation at all times relevant to this lawsuit and is still maintains its principal place of business in Missouri today.  Doc. [45] at 2.  Thus, there is a concrete local interest in Missouri to be protected by the application of Missouri's vexatious refusal law.  *See Milburn*, 2020 WL 4673785, at *4 (finding Plaintiffs' residence in Missouri for four years that included the relevant policy period sufficient to provide an "identifiable local interest").

The Missouri vexatious refusal statute, then, relating as it does to the equitable and fair treatment of Missouri insureds, is not just a matter of Missouri substantive law, but also a declaration of state public policy.  *See Duncan*, 665 S.W.2d at 19-20.  And in this case, there is a clear local interest to be protected by its application.  Under these circumstances, the Court finds that the choice-of-law provisions in the Insurance Contracts do not preclude Maritz's statutorily prescribed remedy for allegedly vexatious conduct by Underwriters.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Underwriters's Motion to Dismiss Vexatious Refusal to Pay Claim (Doc. [101]) is **DENIED**.

Dated this 30th day of November, 2020.

_____
SARAH E. PITLYK